OVERMAN v. WARWICK CYCLE MANUF'G CO.

(Circuit Court, D. Massachusetts. February 7, 1893.)

No. 2,663.

PATENTS FOR INVENTIONS—INFRINGEMENT—BICYCLE SADDLES.

Letters patent No. 331,001, granted November 24, 1885, to Albert H. Overman, for a bicycle saddle, were for a flexible suspension saddle, supported by a spring at its rear end, to which, as well as to the forward support, the saddle is detachably connected, so that "it may be removed and attached at pleasure," in order that "the saddle may be protected from rain and weather, and the bicycle dismantled against riding, with the least inconvenience." *Held* that, in view of the prior state of the art, the capacity of the saddle to be removed with ease and convenience is an essential element of the combination; and hence the patent is not infringed by a somewhat similar device, in which the saddle is removable only by the use of a degree of force that does violence to, rather than exercises a normal function of, the machine.

In Equity. Suit by Albert H. Overman against the Warwick Cycle Manufacturing Company to restrain the alleged infringement of a patent. Bill dismissed.

E. S. White, for complainant.

John L. S. Roberts, for respondent.

CARPENTER, District Judge. This is a bill in equity to restrain an alleged infringement of letters patent No. 331,001, granted November 24, 1885, to the complainant, Albert H. Overman, for saddle for velocipedes. The claims alleged to be infringed are as follows:

"(1) A flexible suspension saddle, a spring forming the rear support of the saddle, which is detachably hooked to it, and detachable connection between the saddle and its forward support, whereby the saddle may be removed and detached at pleasure, substantially as set forth. (2) A flexible suspension saddle, a U-shaped stay secured to its rear end, a spring forming the rear support of the saddle, and adapted to have the said stay detachably connected with it, and detachable connection between the forward end of the saddle and its support, whereby the saddle may be attached to and detached from its supports at pleasure, substantially as set forth. (3) A flexible suspension saddle, detachable connection between the same and its rear support, and a bifurcated hook attached to its forward end for detachable connection with its forward support, whereby the saddle may be attached to and detached from its supports at pleasure, substantially as set forth. (4) A flexible suspension saddle, a spring located under the same, and adapted to be thrown forward, and having the rear end of the saddle detachably connected with it, and detachable connection between the forward end of the saddle and its support, whereby the saddle may be attached to and detached from its supports at pleasure, substantially as set forth."

Without undertaking to foresee all the limitations which are implied in the statement that the patented saddle may be attached

and detached "at pleasure," it is at least clear, as it seems to me, that this phrase implies a saddle so constructed that the attachment and removal may, by a person familiar with the machinery, be easily and quickly removed, and that the process may be often repeated, without injury, other than ordinary wear and tear, either to the removable saddle, or to the remaining parts of the mechanism. So much seems to be implied by the statement that, by the removal of the saddle, it "may be protected from rain and weather, and the bicycle dismantled against riding, with the least inconvenience." Such protection and dismantling would be useful only when the bicycle is left in the road temporarily by the rider; and, as the necessity for so leaving the bicycle constantly occurs, it seems clear that there must be a capability for frequent attachment and removal.

The respondent claims that the patented device is shown in the patent No. 293,656, granted February 19, 1884, to James Alfred Lamplugh, and in the patent No. 294,645, granted March 4, 1884, to Freeman Lillibridge. It is true that the saddles shown in those patents are capable of removal and replacement, but the mechanism shown is evidently neither intended nor adapted for the frequent and habitual removal and replacement which is both contemplated and provided for in the Overman saddle. In truth, the Lamplugh saddle and the Lillibridge saddle are adjustable saddles, rather than removable saddles.

Having in mind the characteristic feature of the Overman patented saddle, as I have thus stated it, I turn to the device which is alleged to be an infringement. There is no drawing in the record which shows this device, and, in describing it, I therefore refer to the example of the machines made by the respondent, which is produced as an exhibit in this case. The saddle in that machine seems to me clearly within the class represented by the Lillibridge saddle, as distinguished, for the purpose of this case, from the class represented by the Overman saddle. It is, indeed, possible to detach and to reattach the saddle in the machine made and sold by the respondent. But the operation cannot be performed "at pleasure," for two reasons. In detaching the saddle, it is necessary to move it forward so as to disengage the fastening at the forward end of the saddle. Now, when the respondent's saddle is adjusted so that the leather is under a tension sufficient to support the weight of the rider, the whole mechanism is absolutely rigid, and incapable of such a forward motion as is necessary to detach the saddle, with the single exception that there is a small piece of vulcanized India rubber, by whose compression a slight forward movement is made possible. This movement can be accomplished only by great pressure, or by a sudden and heavy blow. The removal of the saddle, therefore, requires the expenditure of a degree of force which, as it seems to me, may be best described by saying that it does violence to, rather than exercises a normal function of, the mechanism. In the amount of force required, and also in the danger involved to the machine itself, the respondent's saddle falls far short of the description of the patent, which calls for a saddle which may be "removed and attached at pleasure." For the reason that the respondent is not proved to infringe, the bill must be dismissed, with costs.